UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No. 1:19-cr-00009-JAW |
| ) | |
| WILLIAM STEWART ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

NOW COMES the United States, by and through its attorneys, Halsey B. Frank, United States Attorney for the District of Maine, and Chris Ruge, Assistant United States Attorney, and submits this memorandum to assist the Court in its determination of an appropriate sentence.

**I.      Relevant Background**

On April 19, 2019, the defendant pleaded guilty to one count of possession of child pornography depicting a child under 12. The U.S. Probation office issued its first disclosure of the Presentence Report (PSR) on August 27, 2019. After receiving objections and comments from the parties, the Probation Office issued its revised PSR on October 15, 2019. Presentence conference was held in chambers on November 19, 2019. The sentencing hearing is scheduled for February 6, 2020.

**II.     Sentencing Issues**

Based on the objections in the PSR and the discussion at the presentence conference, the government has identified the following issues to be determined by the Court in sentencing:

  a. <u>Number of images</u>.  In his response to the PSR, the defendant indicated that he objected to the number of images described in Paragraph 7.  At the presentence conference, counsel for the defendant indicated that this objection may be withdrawn prior to sentencing.

  b. <u>Pattern of abuse</u>.  The PSR recommended an enhancement under U.S.S.G § 2G2.2(b)(5) based on the conduct set forth in Paragraph 11 of the PSR.  The defendant denies all conduct set forth in Paragraph 11.  The government submits that the evidence is adequate for the Court to make a factual finding and that the facts will support imposition of the pattern of abuse enhancement.

  c. <u>Distribution enhancement</u>.  The defendant denies the factual finding of the PSR that he distributed child pornography. Revised PSR, Defense Objection # 4.  The government agrees with the Probation Office as set forth below.

  d. <u>Application of guidelines for uncontested conduct</u>.  The defendant asserts that enhancements under U.S.S.G. § 2G2.2(b), subsections (2), (4), and (6), are applied in the majority of federal child-pornography cases, and therefore it would be unfair to apply them to Mr. Stewart in this case.  Revised PSR, Defense Objections ## 3, 5 & 6.  The government disagrees.

  e. <u>Restitution</u>.  The defendant has indicated, through counsel, that he is unable to make any cash restitution payments due to lack of funds.  Counsel to claimant victims have indicated to the government that they are unwilling to accept a compromise sum if it is not paid at the time of sentencing.  These attorneys noted that while Mr. Stewart has claimed insufficient funds to make payments to his victims, he has hired counsel at his own expense.  A discussion of each claim is set forth in the discussion below.

  f. <u>Variant sentence.</u> The defense requests a variant sentence. Revised PSR, Defense Objection #8. The government submits that given the gravity of the offense, the number of images, the violence of the image, and the defendant's own past conduct—which he denies—the defendant should receive a sentence at or above the top of the guidelines sentencing range.

**III. Discussion**

  a. **Number of images.**

As stated above, the defense indicates that this objection may be withdrawn. If it is not, the government is prepared to present the Court with each video and image, so the Court might determine that each file depicts an actual minor and each depicts the sexual exploitation of that minor. If produced, these materials will be provided to the Court under seal in advance of the scheduled hearing.

In any case, the government submits that volume of this carefully curated collection, predominantly depicting sexual exploitation and extreme acts of sexual violence against very young girls, warrants the imposition of the five-point enhancement under U.S.S.G § 2G2.2(b)(7)(D). This collection reflects sustained activity over a period of time, as well as a discerning taste for a fairly specific genre or child pornography. It includes hundreds of images depicting scores of individual victims. While the quantum of human suffering depicted may be hard to determine, the appropriateness of the Guideline enhancement is not.

  b. **The defendant engaged in a pattern of abuse under U.S.S.G. § 2G2.2(b)(5).**

U.S.S.G. § 2G2.2(b)(5) provides for a five-point enhancement if the defendant "engaged in a pattern of activity involving the sexual abuse or exploitation of a minor." The application notes to this section define "sexual abuse or exploitation" as:

> (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423; (B) an offense

3

> under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or (C) an attempt or conspiracy to commit any of the offenses under subdivisions (A) or (B). "Sexual abuse or exploitation" does not include possession, accessing with intent to view, receipt, or trafficking in material relating to the sexual abuse or exploitation of a minor.

U.S.S.G. § 2G2.2, application note 1. This same application note also defines "pattern of activity involving the sexual abuse or exploitation of a minor" as:

> any combination of two or more separate instances of the sexual abuse or sexual exploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct

Importantly, there is no temporal limit on conduct relevant to this enhancement. See United States v. Clark, 685 F.3d 72, 79 (1st Cir. 2012) (child pornography defendant's two prior convictions for indecent acts involving minors were sufficient to support 5-level pattern-of-activity enhancement, even though convictions were more than 24 years old); United States v. Woodward, 277 F.3d 87, 90-92 (1st Cir. 2001) (holding that there is no temporal limit on the sexual conduct that may be considered for the pattern of abuse enhancement); United States v. Aberts, 859 F.3d 979 (11th Cir. 2017) (defendant admitted he had engaged in sexual activity when he was "about 16" with younger relatives, who were then under 12 years of age, some 30 years before subject offense).

There is no right confrontation at sentencing, and the Court may rely on hearsay statements. The First Circuit has repeatedly held that reliable hearsay is a proper basis for making sentencing determinations. United States v. Lee, 892 F.3d 488, 492 (1st Cir. 2018) ("A defendant's rights under the Confrontation Clause do not attach during sentencing"); United States v. Luciano, 414 F.3d 174, 178 (1st Cir. 2005) (reaffirming, post-Crawford, that "there is no Sixth Amendment Confrontation Clause right at sentencing."). Indeed, the First Circuit has

held that even hearsay statements of confidential informants may be relied upon, if they otherwise show sufficient indicia of reliability and accuracy. United States v. Green, 426 F.3d 64, 67 (1st Cir. 2005) (holding that sufficiently detailed, mutually supporting, and internally consistent hearsay from five confidential informants was sufficient to establish the defendant's leadership in the criminal enterprise, his use of stash houses, and his volume of distribution).

     Here, multiple women have reported childhood abuse at the hands of Mr. Stewart, and have given statements to law enforcement in the course of recent investigations of Stewart's conduct. Maine State Police Detective Abbe Chabot produced multiple reports after her conversations with these women. These reports contain significant detail and indicia of reliability, to include that they are mutually supporting and relate to some facts the defendant has acknowledged, specifically about his living arrangements when he left the Navy. Police reports that themselves convey indicia of reliability are sufficient foundation for the Court's findings at sentencing. United States v. Pinet-Fuentes, 888 F.3d 557, 560 (1st Cir. 2018) (police report submitted to show that machinegun was stolen); United States v. Ruby, 706 F.3d 1221, 1228-29 (10th Cir. 2013) (noting that hearsay may be considered at sentencing, if the statements "bear some minimal indicia of reliability") (quoting United States v. Damato, 672 F.3d 832, 847 (10th Cir. 2012)). Accordingly, while Detective Chabot's reports they do contain hearsay, they are sufficiently reliable for their purpose at sentencing.

     These reports, as summarized in Paragraph 11 of the PSR, are also given additional corroboration by the uncontested portions of the PSR. Specifically, Jane Doe 4 states that she saw Jane Doe 2 being raped by Stewart when Jane Doe 2 was about 10 or 11 years old; while Jane Doe 2 does not specifically remember this incident, she does remember sexual contact in the form of touching genitals starting when she was that same age. These disclosures are

consistent with Stewart's admission set forth in Paragraph 6 or the PSR, to the effect that he preferred child pornography depicting 9 to 12 year old girls.  It is also consistent with his creation of child pornography images showing the face of a child known to him, when that child was between 9 and 14 years old, as described in paragraph 9 of the PSR.  And this conduct is consistent with the matter giving rise to the instant offense, that is, collecting hundreds of images and videos of the graphic sexual abuse of children, many of them girls 5 to 11 years of age. PSR, Paragraph 12.

Regardless of the applicability of the guideline enhancement, a wrongful or frivolous denial of relevant conduct is an appropriate basis to deny an acceptance of responsibility enhancement.  See United States v. Cates, 897 F.3d 349, 355 (1st Cir. 2018).

    **c.**    **The PSR properly sets forth facts supporting the distribution enhancement.**

The PSR recommends a two point enhancement for distribution of child pornography. The defendant objects that this does not apply to him a mere user of a peer-to-peer network. Nonetheless, Courts have consistently found conduct like the defendant's to be distribution within the meaning of the law.  United States v. Chiaradio, 684 F.3d 265, 281-82 (1st Cir. 2012); United States v. Budziak, 697 F.3d 1105, 1108-10 (defendant's knowledge of how peer-to-peer software worked was sufficient to demonstrate he knew he was sharing files); United States v. Shaffer, 472 F.3d 1219, 1223 (10th Cir. 2007) (analogizing peer-to-peer users to self-service gas station operators); United States v. Baldwin, 743 F.3d 357, 361 (2d Cir. 2014) (holding that the distribution enhancement requires only knowledge of the file-sharing properties of the network, not intent to distribute).

The First Circuit opinion in United States v. Cates is particularly instructive in this case. 897 F. 3d 349.  In Cates, the circuit court held that the government need only show the defendant

was aware of the file-sharing properties of Bit Torrent. Indeed, the court specifically noted the relevance of the defendant's own statements about how the network operated in determining that that Cates knew files could be shared from his computer.

Mr. Stewart's case is strikingly similar. During the execution of the search warrant at his home, Mr. Stewart was interviewed by Maine State Police. When first questioned about he described how Bit Torrent worked in basic terms, focusing on anonymity. He denied knowingly sharing files, but admitted that he moved files out of his download file "sometimes." A few minutes later, Stewart was asked again about sharing, and he again denied doing so: "I don't do nothing that-- I don't share with nobody, I don't sell it, I don't do nothing like that." The detective then described the automatic sharing function of the network, to which Stewart replied "Yeah, but if you shut it off instantly, if you're done downloading you get rid of –you shut it off completely, you can't get, you know--"

At this point the detective confirms with Stewart "So you know how the application works and you were taking steps not to share?" Candidly, Stewart admitted "yes."

The key fact is not that Stewart intended to share, or that he wanted to share. He may well have wished not to share, as that is how he was caught. What matters is that he knew the program would automatically share, and he used it anyway. He opened his computer up to distributing on the network so he could get child pornography. While he was using the network, a file was actually downloaded from his computer, confirming that –despite his denials—Stewart was using the software in a way that actually did effectuate the distribution of child pornography. Given his knowledge of the network, and his avowed efforts to avoid detection even while searching said network for child exploitation materials, Stewart's conduct falls squarely within U.S.S.G. § 2g2.2(b)(3)(F).

### d. The guidelines fairly represent the defendant's significant conduct.

The defendant suggests that because most offenders federally prosecuted for child pornography offenses receive enhancements for having images of children under 12, having images of sadism, and use of a computer, the defendant should not receive any enhancements for these factors. The government disagrees.

As a primary matter, the defendant's argument runs counter to basic fairness and the desire to avoid undue sentencing disparities. That the enhancements are imposed in every other case is no reason not to impose them in the defendant's case, when he committed similar conduct to each of the other cited defendants.

Second, the fact that these enhancements are commonly applied in federal child exploitation cases does not make these factors ordinary, or simply part of the offense. Here, the Guidelines give important and appropriate consideration to the nature and circumstances of the offense. In asking this Court to disregard certain provisions of U.S.S.G. § 2G2.2, the defense appears to rely on statistics presented in the U.S. Sentencing Commission's 2013 report to Congress.[1] Although the Commission's report considers important matters in the development of child-exploitation prosecutions, its proposals have yet to be endorsed by Congress. Further, the fact that certain guidelines are applied in the majority of federally prosecuted cases does not, of itself, suggest that such factors are subsumed within the charge or are otherwise an ordinary part of the offense. Rather, this phenomenon of consistency reflects the government's focus of limited prosecutorial resources on the most serious offenses and offenders.

The defendant specifically suggests that this Court should discount the relevance of prepubescent images and videos in this case, submitting that because these images appear in the

---

[1] U.S. Sentencing Commission, REPORT TO CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES, February 27, 2013.

vast majority of cases, they are virtually a part of the underlying offense.  This argument misconstrues the Commission's report.  As a primary matter, the defense states that over 90% of child pornography cases include prepubescent images.  Of course, this statistic is for "cases;" it therefore does not include all people who unlawfully possess child pornography in the United States.  Neither does it represent all the child-pornography offenders caught by law enforcement.  Rather, it represents the percentage of federal defendants in cases sentenced under U.S.S.G. § 2G2.2 in fiscal year 2010 (1,654 defendants) who received the enhancement for prepubescent images.[2]  Thus, it is not accurate to say that this statistic means that over 90% of all people who violate the child pornography laws have prepubescent images; it means that over 90% of all offenders the federal government chooses to prosecute do.  In other words, the Congress has defined possession of prepubescent images as an aggravating factor, and the government has targeted its limited resources at these more significant offenses.  Put another way, the fact that 1,593 defendants in a single year were found to have possessed prepubescent images does not make that fact less significant in any one of those cases.  It certainly does not make that fact less significant in this case, where the defendant sought out files accurately titled "toddlerfucking," "4ypussy licked and rubbed," "5yassfuck," and "bedtime rape."  The defendant's acute and long-standing interest in the violent sexual exploitation of prepubescent girls—an interest not consigned to fantasy—is most certainly an aggravating factor in this case.

      The defendant also asks the Court to exclude U.S.S.G. §2G2.2(b)(6) from its guideline calculation.  The government accepts that the majority of cases prosecuted will doubtless involve the use of a computer, to the extent that this may no longer be a distinguishing feature of offense conduct in the mine run of cases.  Still, the Guidelines as they currently exist give little other

---

[2] Id., p. 209, Table 8-1.

avenue to reflect the special nature and harm caused by the use of computers in the modern child pornography trade, such as the sophisticated means the computer allows a defendant to train his sights on a particular type of young victim being violated in a particular way, or the ability to use specialized software and online services to avoid detection and eliminate evidence of relevant conduct that should otherwise be considered by the court.  The Court might also consider these factors under its Section 3553(a) analysis, particularly the defendant's use of peer-to-peer networks, as well as the evidence that he was using the onion router (TOR), on what is commonly referred to as "the dark web," where the defendant bookmarked such pages as "Pedobear's overchan!," "PedoBoard Index page," "CPHunter: home," and "OnionPedo Video Archive."

The defendant also objects to the four-point enhancement for the depiction of sadistic images of children, stating that its application would be unfair and unreasonable in his case.  The government respectfully submits that this is simply not the case for someone who downloads and saves videos such as those described above.  It is also not unfair to apply the enhancement to someone who sought out the materials described in Paragraphs 4 and 7 of the presentence report.

### e.  Restitution should be paid to the victims who have made claims.

Restitution is mandatory.  18 U.S.C. § 2259.  The claimants in this case have each submitted proper claims compliant with the statute and with United States v. Paroline, 572 U.S. 464, 134 S.Ct 1710 (2015).  As the Court observed in Paroline, the victims' costs of treatment and lost income resulting from the trauma of knowing men like the Mr. Stewart find gratification viewing the images and videos of their sexual abuse are, in fact, direct and foreseeable consequences of the defendant's offenses.  134 S.Ct. 1710, 1722.  The government respectfully

submits that the victims who have thus far submitted full restitution claims have complied with § 2259 and Paroline.

In Paroline, the Court did not require that a formula exactly account for the harm caused by one particular defendant toward a claiming victim. Indeed, the Court specifically rejected this notion, and required that the sum paid for the additional harm caused by the defendant be neither a token nor a nominal amount. 134 S.Ct. at 1727. Rather, the ordered restitution should reflect the defendant's role in the victims harm, and also be large enough to "impress[] upon offenders the fact that child pornography crimes, even simple possession, affect real victims. Id.

Because the offense conduct in this case predates the Amy Vicky and Andy Act, the version of 18 U.S.C. § 2259 in effect before December 7, 2018, controls. Nonetheless, the Court can consider that Congress has determined $3,000 to be the floor for restitution orders in these cases. The government respectfully submits that $3,000 represents low-end of non-nominal awards under Paroline. Where Stewart possessed dozens of images of an individual victim, a higher amount is appropriate.

**1. 2crazygurls/Chelsea.**

"Chelsea" has submitted a package supporting her $10,000 restitution claim as to Mr. Stewart. This claim is appropriate and supported by Paroline and § 2259. Chelsea has submitted expert analysis of her losses, including expected lifetime losses calculated as high as $552,750, with well over $100,000 coming from anticipated counselling costs.

The government is aware of six restitution orders nationwide for this victim, all entered since May 2019. Awards range from $2,000 to $10,000, with an average of $4,165.

**2. Angela.**

"Angela" has submitted a package supporting her $12,000 restitution claim as to Mr. Stewart.  This claim is appropriate and supported by Paroline and § 2259.  Angela has submitted expert analysis of her losses, including expected lifetime losses calculated as over $500,000.  District awards include:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Roscoe | 15-cr-00100-JDL | 2/5/2016 | $1,000 |
| United States v. Millette | 16-cr-00004-NT | 6/6/2016 | $3,000 |
| United States v. St. Jean | 14-cr-00145-NT | 9/22/2015 | $3,500 |
| United States v. Moczara | 15-cr-00163-GZS | 4/1/2016 | $1,000 |
| United States v. Parent | 15-cr-00166-JAW | 7/14/2016 | $2,000 |
| United States v. Blodgett | 16-cr-00059-P-S | 12/28/2016 | $3,000 |

Nationwide, Angela has received over 300 post-Paroline federal restitution judgments ranging from $18.30 to $29,859.00.  Of these, 50 have been for $3,000, and another 23 have been for $5,000.

**3.  At School.**

"Violet", the victim in At School series, has submitted a package supporting her $10,000 restitution claim as to Mr. Stewart.  This claim is appropriate and supported by Paroline and § 2259.  Violet has submitted expert analysis of her losses, including documented losses calculated at $794,118.35.

The government is not aware of any restitution awards for this victim in the District of Maine.  Nationwide, At School has received no fewer than 120 post-Paroline/Pre Amy, Vicky and Andy Act restitution awards, with a high of $72,000, a low of $300, and a mode of $3,000.

**4.  BluePillow1**

"Henley," the victim in the BluePillow1 series, has submitted a package supporting her $5,000 restitution claim as to Mr. Stewart. In July, 2019, Henley submitted a request indicating that she had begun the process of obtaining of gathering additional documentation of proof of loss, but the psychological report by Dr. Green estimates necessary psychological treatment to run well in excel of $100,000.

The government is not aware of any restitution awards for this victim in the District of Maine. Nationwide, BluePillow1 has received no fewer than 11 post-Paroline/Pre Amy, Vicky and Andy Act restitution awards, with a high of $3,500, a low of $500, and a mode of $1,000. Given that the defendant had amassed 95 images of Henley's abuse, an order of $5,000 is appropriate in this case.

5. **BluesPink1.**

As set forth in her robust claim package, Erin's demonstrated damages are in excess of $3,000,000. She has requested no less than $3,000. Nationwide, she has had several restitution orders, ranging from $750 to $3,500, with a mode of $1000. $3,000 is an appropriate non-nominal sum.

6. **Jan_Socks1.**

"Sierra" has demonstrated losses of over $1,000,000. She has submitted a claim for $10,000. Department records of restitution orders specific to claimant Sierra indicate no fewer than 75 awards in the post-Paroline/Pre Amy, Vicky and Andy Act era, with a high of $10,000 (6 orders) and a low of $250. Of these, 14 were for $3,000. District awards include the following

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Millette | 16-cr-00004-NT | 06/06/16 | $3,000 |
| United States v. Cook | 16-cr-00153-JAW | 04/18/17 | $4,000 |
| United States v.Coffin | 17-cr-00025-JAW | 06/14/16 | $4,000 |
| United States v.Cates | 15-cr-00139-JAW | 04/25/17 | $4,000 |

| | | | |
|---|---|---|---|
| United States v. Mowry | 18-cr-00015-NT | 07/31/18 | $10,000 |

As the defendant had 56 files depicting Sierra, the government respectfully submits that a restitution order between $5,000 and $10,000 is appropriate in this case.

### 7. Jan_Socks2.

"Savannah" has projected treatment costs as high as $455,377.00. She has submitted a claims for $7,500. Department records of restitution orders specific to claimant Savannah indicate no fewer than 43 awards in the post-Paroline/Pre Amy, Vicky and Andy Act era, with a high of $10,000 (1 orders) and a low of $428.50. Of these, 9 were for $2,000 and 8 were for $3,000. Undersigned counsel is not presently aware of any district awards specific to Savannah.

As the defendant had 1 file depicting Savannah, the government respectfully submits that a restitution order of no less than $3,000 is appropriate in this case.

### 8. Jan_Socks3.

"Skylar" has projected losses and costs of over $300,000. She has submitted a claim for $7,500. Department records of restitution orders specific to claimant Skylar indicate no fewer than 54 awards in the post-Paroline/Pre Amy, Vicky and Andy Act era, with a high of $7,500 (5 orders) and a low of $250. Of these, 13 were for $3,000. District awards include the following

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Millette | 16-cr-00004-NT | 06/06/16 | $3,000 |
| United States v. Mowry | 18-cr-00015-NT | 07/31/18 | $10,000 |

As the defendant had 1 file depicting Skylar, the government respectfully submits that a restitution order of no less than $3,000 is appropriate in this case.

### 9. Jenny.

"Jenny" has requested restitution in the amount of no less than $3,000, and has provided documentation estimating losses at about $2,832,230. Department records of restitution orders for Jenny indicate no fewer than 80 awards in the post-Paroline/Pre Amy, Vicky and Andy Act era, with a high of $25,600 and a low of $100, and a mode of $3,000. No district awards were identified. The government respectfully submits that $3,000 is the proper amount in this case, where the defendant had 1 image of Jenny.

### 10. Lighthouse1.

"Maureen" has estimated losses of over $440,000. She has submitted a claim for $10,000. Department records of restitution orders have over $260 orders in the Lighthouse series, with over 50 specific to claimant Maureen in the post-Paroline/Pre Amy, Vicky and Andy Act era, with a high of $10,000 and a low of $250. Of these, 11 were for $3,000. District awards include the following:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Richard | 17-cr-00035-GZS | 04/18/18 | $2,500 |

As the defendant had 2 files depicting Maureen, the government respectfully submits that a restitution order of no less than $3,000 is appropriate in this case.

### 11. Marineland.

"Sarah," the victim in the Marineland series, has submitted a package supporting her $15,000 restitution claim as to Mr. Stewart. This claim is appropriate and supported by Paroline and § 2259. Sarah has been awarded the following restitution orders in this district:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. St. Jean | 14-cr-00145-NT | 09/22/15 | $5,000 |
| United States v. Brown | 14-cr-00008-JAW | 05/07/15 | $3,500 |
| United States v. Anderson | 15-cr-00053-NT | 12/02/15 | $5,000 |

| | | | |
|---|---|---|---|
| United States v. Pike | 15-cr-00030-GZS | 11/06/15 | $2,320 |
| United States v. Dunston | 15-cr-00162-JAW | 03/28/16 | $5,000 |
| United States v. Moczara | 15-cr-00163-GZS | 04/01/16 | $2,500 |
| United States v. Millette | 16-cr-00004-NT | 06/06/16 | $3,000 |
| United States v. Cook | 16-cr-00153-JAW | 04/18/17 | $3,000 |
| United States v. Cates | 15-cr-00139-JAW | 04/25/17 | $5,000 |
| United States v. Coffin | 17-cr-00025-JAW | 08/14/18 | $3,000 |

Marineland has received over 460 post-Paroline judgements nationwide, ranging from $100 to $56,433.  Her materials submitted to the Court demonstrate over $2.7 million in damages.  The defendant had 9 images of Sarah; the government respectfully submits that an award of no less than $5,000 is appropriate in this case.

**12. PinkHeartSisters2.**

"Tori", the victim in this series designation, has submitted a letter estimating initial costs in compiling forensic determination of losses as over $20,000.  She requests restitution in an amount no less than $3,000.  The government is not aware of restitution orders for this series in the District.  Nationwide, orders have ranged from $750 to $25,300, with an estimated median of about $2,500.

**13. Sweet Sugar/Sweet White Sugar-Pia.**

Pia has submitted a package supporting her $5,000 restitution claim as to Mr. Stewart. This claim is appropriate and supported by Paroline and § 2259.  Pia has been awarded the following restitution orders in this district:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Derrico | 16-cr-00086-GZS | 3/31/2017 | $2,500 |
| United States v. Cook | 16-cr-00153-JAW | 4/18/2017 | $4,000 |
| United States v. Locke | 17-cr-00009-NT | 8/16/2017 | $1,000 |
| United States v. Mowry | 18-cr-00015-NT | 7/31/2018 | $4,000 |
| United States v. Doe | 17-cr-00091-JAW | 9/22/2015 | $5,000 |

16

Pia has received over 170 post-Paroline federal judgments nationwide associated with the Sweet White Sugar designation, ranging from $250 to $12,500. The mode of these judgments is $5,000. As the defendant had 532 files depicting this victim, who was under 5 during the preponderance of her documented abuse, an order of no less than $5,000 is fully appropriate in this case.

### 14. Sweet Pink Sugar-Mya.

To the government's understanding, the victims in the Sweet Pink Sugar series designation, "Mya," is not depicted in the images found on the defendant's computers. The third Sweet Sugar victim identified was that designated as Sweet Brown Sugar. This victim has not made a claim. The government therefore does not endorse restitution on behalf of Mya.

### 15. Sweet Purple Sugar-Ava.

Ava has submitted a package supporting her $5,000 restitution claim as to Mr. Stewart. This claim is appropriate and supported by Paroline and § 2259. Ava has been awarded the following restitution orders in this district:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Derrico | 16-cr-00086-GZS | 3/31/2017 | $2,500 |
| United States v. Cook | 16-cr-00153-JAW | 4/18/2017 | $3,000 |

Ava has received over 60 post-Paroline federal judgments nationwide, ranging from $0 to $10,000. The mode of these judgments is $5,000, which is an appropriate amount in this case were the defendant had 31 files depicting her abuse.

### 16. Teal&PinkPricess2.

While "Raven" has set forth sufficient basis for receiving a non-nominal amount of restitution, particularly in light of the defendant possession 17 images of her abuse, she has not provided much detail in terms of demonstrated damages. Still, the Court may appropriately order $3,000 in restitution for the reasons set forth above. In the few restitution orders identified by the prosecution, other courts have ordered between $750 and $3,000.

**17. Teal&PinkPricess1.**

Counsel for the government has attempted to contact the attorney for Teal&PinkPrincess to determine if a claim is made for both designated victims in this series. No response has yet been received. The government will inform the Court and the defense immediately if a response is received.

**18. TightsnGold.**

"Emily" has submitted a package supporting her claim of no less than $3,000 in restitution from Mr. Stewart. This claim is appropriate and supported by Paroline and § 2259. Costs of her mental health treatment has been estimated at $545,500. Emily has been awarded the following restitution orders in this district:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. Richard | 17-cr-00035-GZS | 04/18/2018 | $2,500 |
| United States v. Cook | 16-cr-00153-JAW | 4/18/2017 | $3,000 |

Ava has received over 60 post-Paroline federal judgments nationwide, ranging from $0 to $10,000. The mode of these judgments is $5,000, which is an appropriate amount in this case were the defendant had 31 files depicting her abuse.

**19. Vicky.**

"Lilly", the victim in Vicky series, has submitted a package supporting her $10,000 restitution claim as to Mr. Stewart. This claim is appropriate and supported by Paroline and

§ 2259.  Lilly has submitted expert analysis of her losses, including expected lifetime losses of no less than $4,517,390.913.  As of the time of her claim, she still had over $3,000,000 in uncollected losses.  In addition to six pre-Paroline restitution orders for $5,250 each, Lilly has been awarded the following restitution orders in this district:

| CASE | DOCKET | SENTENCE DATE | RESTITUTION |
|---|---|---|---|
| United States v. St. Jean | 14-cr-00145-NT | 09/22/15 | $5,000 |
| United States v. Johnson | 13-cr-00131-JNT | 05/07/15 | $5,000 |
| United States v. Anderson | 15-cr-00053-NT | 12/02/15 | $5,000 |
| United States v. Pike | 15-cr-00030-GZS | 11/06/15 | $3,000 |
| United States v. Duffy | 16-cr-00025-GZS | 06/14/16 | $5,000 |
| United States v. Cates | 15-cr-00139-JAW | 04/25/17 | $7,500 |
| United States v. Mowry | 18-cr-00015-NT | 07/31/18 | $10,000 |

Nationwide, Lilly has received over 470 post-Paroline judgments, ranging from $24.24 to $177,673.00  She also received over 570 addition pre-Paroline restitution awards.  About a third of the total number of orders are in the $3,000 to $5,000 range.

  f.  Regardless of the Court's findings on individual guideline enhancements, the defendant's overall course of conduct, over several years, speaks to the seriousness of the offense, and the danger the defendant poses to children and society.  A sentence toward the top of the statutory range is fully appropriate under Section 3553(a).

### III. Conclusion.

The defendant should be ordered to pay restitution, the JVTA assessment, to serve a sentence at the high end of the statutory range, and to be subject to supervised release for life.

Dated: December 17, 2019               Respectfully submitted,

                                                    HALSEY B. FRANK
                                                  UNITED STATES ATTORNEY

                                                  **BY:  /s/  CHRIS RUGE**
                                                  CHRIS RUGE
                                                  Assistant United States Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2019, I electronically filed the GOVERNMENT SENTENCING MEMORANDUM with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Walter McKee, Esq., at wmckee@mckeelawmaine.com

                                                  Halsey B. Frank
                                                  United States Attorney

                                                  BY:  /s/ Chris Ruge
                                                  Chris Ruge
                                                  Assistant United States Attorney
                                                  United States Attorney's Office
                                                  202 Harlow Street, Suite 111
                                                  Bangor, ME 04401
                                                  (207) 945-0373
                                                  chris.ruge@usdoj.gov